USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 8/10/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HERBERT FEINBERG,

                Plaintiff,

      v.

APPLE, INC.,

                Defendant.

No. 15-CV-5198 (RA)

<u>OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

Plaintiff Herbert Feinberg filed this action alleging that Defendant Apple, Inc.'s retail store on East 74th Street in Manhattan constitutes a nuisance and a fire hazard. Apple moves to dismiss the Second Amended Complaint ("SAC") for lack of standing and failure to state a claim. The motion is granted.

## BACKGROUND

Feinberg is a resident of East 74th Street in Manhattan who had long opposed Apple's plan to open a retail store (the "Store") "located eighty-seven and one half (87 1/2) feet from" his home. SAC ¶¶ 2, 6. He "is a member and leader of a group of neighbors . . . all of whom are united in their opposition to the opening of" Apple's Store. SAC ¶ 2. In that capacity, Feinberg claims to have collected "over four hundred (400) petition signatures," and "contacted government agencies to no avail as well as attempted in good faith to negotiate with Apple, also to no avail." SAC ¶¶ 7, 16.

Having "sent letters to the authorities confirming that each has no intention of bringing" an action against Apple, SAC ¶ 12, on June 3, 2015, Feinberg filed suit for an injunction in the Supreme Court of the State of New York, County of New York. On June 12, 2015, Feinberg

amended his complaint for the first time. On June 13, 2015, the Store opened. SAC ¶ 17. On July 2, 2015, Apple removed the case to this Court and on August 19, 2015, Apple moved to dismiss the First Amended Complaint. On September 16, 2015, Feinberg moved to amend his complaint a second time. On November 30, 2015, having received leave of the Court, Feinberg filed the SAC.

According to the SAC, Apple, "by establishing a retail store in the neighborhood and operating it as it does other of its retail stores, will interfere with his right of quiet enjoyment as well as the right of quiet enjoyment of other homeowners and residents." SAC ¶ 6. Feinberg asserts that "Plaintiff has every reason to believe that Apple's operations and activities . . . will constitute a private nuisance to himself and a public nuisance to the neighborhood." SAC ¶ 10. In particular, he predicts that "there will be a massive increase in pedestrian traffic," SAC ¶ 19, that "the very existence of an Apple store creates and multiplies crowds," SAC ¶ 24, and that Apple's product launch schedule will cause "the occupation of the neighborhood, its sidewalks, and its streets, by long lines of Apple customers," SAC ¶ 32. Among other things, Feinberg worries that "[m]obile food trucks will park at the Madison Avenue corner," SAC ¶ 38, hot dog vendors and customers will cause residents—especially the elderly—to be "pushed, jostled, and put at a safety risk," SAC ¶ 40, and that the Store may have "noisy Rock N Roll concerts" requiring "police intervention," SAC ¶¶ 44–45.

Feinberg "makes these allegations based on the analysis of Apple Stores at other locations and their operations." SAC ¶ 27. Because "each of the instances of nuisance conditions set forth in this complaint have already occurred at some or all of the existing Apple stores in Manhattan," he asserts, "[t]his establishes the probability that these same conditions and circumstances will

take place if the store operates on Madison Avenue and 74th Street in the same or similar manner to other locations unless this Court intervenes and orders appropriate relief." SAC ¶ 17.

Plaintiff also alleges that the Store presents "a serious question of fire safety which Apple refuses to address, other than stating it has all necessary building permits and authorizations." SAC ¶ 53. His complaint describes a "walk through" that revealed various fire hazards including "a passageway that is potentially a serious problem in the event that significant numbers of people need to evacuate," SAC ¶ 62, "a locked exit access door," SAC ¶ 63, and a set of doors for which "in the event there is a malfunction in any way in the 'unlocking mechanism' . . . there is not [*sic*] apparent escape," SAC ¶ 65. In support, Plaintiff offers the "evidence proffered by an expert . . . Tim Collins, the fire safety and protection engineer[] engaged by Plaintiff." Pl.'s Mem. at 9. Collins "believe[s] there [are] a number of facts presenting potential concern," including "a substantial quantity of combustible items . . . in the primary means of egress corridor," a failure to submit a "Fire Protection Plan," and various other purported New York City Fire Code violations. *See* Affidavit of Tim Collins, Ex. C. Ultimately, Collins declines to "make a definitive determination at this point because [he has] not surveyed the premises in its entirety." *Id.*

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. On a motion to dismiss, the Court accepts as true all well pled factual allegations in the complaint and draws all inferences in a plaintiff's favor. *See id.*

## DISCUSSION

Apple moves to dismiss the SAC because Feinberg has yet to suffer a cognizable injury such that he lacks standing and fails to state a claim for public nuisance, private nuisance, or fire code violations. Apple further asserts that because Feinberg has twice amended his complaint, additional repleading would be futile. The Court agrees and dismisses Feinberg's action with prejudice.

### I.   Standing

Feinberg lacks standing to assert claims against Apple. "Article III of the Constitution limits the jurisdiction of federal courts to the resolution of 'cases' and 'controversies.'" *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (quoting U.S. Const. art. III, § 2). "In order to ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper part[ies] to bring suit." *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) (citation omitted) (alteration in original); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). To have standing "a plaintiff must demonstrate (1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). "For an alleged injury to support constitutional standing, it 'must be concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015) (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)).

Apple argues that Feinberg "does not allege that he has personally suffered or is in imminent danger of suffering a concrete injury." Def.'s Mem. at 9. Feinberg contends that "[t]he

proximity of [his] property to the Apple Store . . . demonstrates that there is standing as Plaintiff and his home are in the 'zone of danger.'" Pl.'s Mem. at 9.

Feinberg's claims are too speculative to support standing. The SAC recounts purported issues at Apple's other retail stores and concludes that such allegations "establish[] the probability that these same conditions and circumstances will take place if the store operates on Madison Avenue and 74th Street in the same or similar manner to other locations." SAC ¶ 16. Despite having amended his complaint more than five months after Apple's Store opened, however, Feinberg does not allege that this feared parade of horribles has occurred and, indeed, Feinberg's briefing acknowledges that "no disturbances have yet occurred since the June 13, 2015 store opening." Pl.'s Mem. at 3.

In *Morgan v. Cty. of Nassau*, 720 F. Supp. 2d 229 (E.D.N.Y. 2010), the court considered a similarly speculative claim by a member of a veterans group, Iraq Veterans Against the War, who sought to enjoin police in Nassau County from using "mounted officers for crowd control." *Id.* at 243. The court declined to grant the requested relief because the plaintiff's allegation that "'*if* there are future Iraq Veterans Against the War events in Nassau County, [the plaintiff] *may* travel to participate in them' is precisely the kind of hypothetical harm that is insufficient to confer standing on a plaintiff." *Id.* at 244 (emphasis and alteration in original). Here, Feinberg's allegations as to the harm he may suffer "*if* the store operates" in a certain fashion are similarly speculative and hypothetical. These mere predictions of harm are insufficient to confer constitutional standing.

Feinberg's reliance on *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217 (2d Cir. 2008) is misplaced. In that case, the Second Circuit found that the district court had not addressed plaintiffs' anti-trust claims, which conferred standing because the complaint alleged actual

5

competitive harm. *Id.* at 223. Here, no such actual harm has been alleged. To the extent Feinberg relies on *Ross*'s admonition that "[i]njury in fact is a low threshold, which we have held need not be capable of sustaining a valid cause of action, but may simply be the fear or anxiety of future harm," *id.* at 222, his reliance is also baseless. Since *Ross*, the Second Circuit has clarified that allegations of fear or anxiety of future harm are alone insufficient to confer standing. Instead, "such fears may support standing when the threat creating the fear is sufficiently imminent." *Hedges v. Obama*, 724 F.3d 170, 195 (2d Cir. 2013). Feinberg's allegations that he may suffer harm at some unidentified point in the future do not meet this standard. Indeed, now, more than one year after the Store opened, Feinberg himself acknowledges that none of this fears have yet come to fruition.

As the SAC does not sufficiently allege an injury-in-fact, Feinberg lacks standing and the SAC must be dismissed.

**II.     Failure to State a Claim**

Even if Feinberg had standing to bring this action, the Court would nonetheless dismiss the SAC because Feinberg fails to state a claim for private nuisance, public nuisance, or fire code violations.

**A.     Private Nuisance Claim**

Feinberg asserts a private nuisance claim based on the "reasonably foreseeable consequences of Apple establishing a retail store . . . that will violate his individual rights by reason of his home's location and close proximity to the Apple store." SAC ¶¶ 69–70. In particular, Feinberg asserts that his home "should not be subject to the unique hazards that are presented by the Apple store if its usual and customary operations in other locations will take place in the

6

neighborhood" including, "material injury to himself and property damage to his home." SAC ¶¶ 6, 8.

To bring a claim for private nuisance under New York Common Law, a plaintiff must allege, "'(1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act.'" *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 93 (2d Cir. 2000) (quoting *Scribner v. Summers*, 84 F.3d 554, 559 (2d Cir. 1996)).

Feinberg's private nuisance claim fails for substantially the same reasons he lacks standing: the purported interference is purely speculative in nature. In the SAC—filed over five months after the Store opened—he neither alleges that he has been harmed since the opening nor that the harm is imminent. In *Balunas v. Town of Owego*, 867 N.Y.S.2d 788 (N.Y. App. Div. 2008), the New York Appellate Division for the Third Department, dismissed an "action alleging that construction of [a] water tank on land abutting plaintiffs' property would constitute private nuisance." *Id.* at *1. That court rejected as insufficient to state a private nuisance claim "plaintiffs' allegation that their home would be damaged in the event of a tank rupture . . . inasmuch as such danger is speculative and theoretical, rather than 'known or substantially certain to result.'" *Id.* at *2 (quoting *Christenson v. Gutman*, 671 N.Y.S.2d 835, 839 (N.Y. App. Div. 1998)). Similarly here, Feinberg's allegations of impending crowds and fire hazard are "speculative and theoretical." *Id*; *see also Greentree at Murray Hill Condo. v. Good Shepherd Episcopal Church*, 146 Misc. 2d 500, 512 (N.Y. Sup. Ct. 1989) (dismissing plaintiffs' "claim of irreparable harm" from the opening of a homeless shelter because it was "based solely on speculative fears of crime, drugs and diminution of property values").

*Vacca v. Valerino*, 16 A.D.3d 1159 (N.Y. App. Div. 2005), cited by Feinberg, is readily distinguishable. In *Vacca*, the court upheld a jury verdict awarding damages against a defendant whose retaining wall "encroache[d] upon plaintiffs' property and threatens to collapse thereon." *Id.* at 1160. As Feinberg acknowledges that "no disturbances have yet occurred since the June 13, 2015 store opening," Pl.'s Mem. at 3, his attempt to analogize the operation of Apple's Store to a collapsing wall is unavailing. His private nuisance claim is dismissed.

### B. Public Nuisance Claim

Feinberg's public nuisance claim is also without merit. "To prevail on a public nuisance claim under New York law, a plaintiff must show that the defendant's conduct amounts to a substantial interference with the exercise of a common right of the public, thereby endangering or injuring the property, health, safety or comfort of a considerable number of persons." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 725 F.3d 65, 121 (2d Cir. 2013) (internal quotations and citation omitted). "A public nuisance is actionable by a private person only if it is shown that the person suffered special injury beyond that suffered by the community at large. This principle recognizes the necessity of guarding against the multiplicity of lawsuits that would follow if everyone were permitted to seek redress for a wrong common to the public." *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1104 (N.Y. 2001) (internal citations omitted).

Apple argues that Feinberg does not allege any injury beyond that purportedly suffered by the community at large. The Court agrees. Increased risk of fire, crowds, and traffic are quintessentially issues that affect the public. *See Wheeler v. Lebanon Valley Auto Racing Corp.*, 755 N.Y.S.2d 763, 765 (N.Y. App. Div. 2003) (dismissing a public nuisance claim because "all

8

persons in the affected community would be 'similarly impacted' by exposure to 'unacceptable' noise levels during the Speedway's activities").

In support of his argument to the contrary, Feinberg urges the Court to follow *Leo v. Gen. Elec. Co.*, 538 N.Y.S.2d 84 (N.Y. App. Div. 1989), in which commercial fishermen were found to state a claim for public nuisance based on the defendant's pollution of the Hudson River with toxins. *Id.* at 845–46. But unlike here, "[i]n *Leo* . . . [p]laintiffs were able to establish that their injuries were special and different in kind, not merely in degree: a loss of livelihood was not suffered by every person who fished the Hudson." *532 Madison*, 750 N.E.2d at 1105. Feinberg does not allege that he has or will suffer a loss of livelihood or, indeed, any other harm different from harm that may be experienced by his entire neighborhood.

Because Feinberg's alleged injury is "common to an entire community" and he would suffer if at all "only in a greater degree than others, it is not a different kind of harm and [he] cannot recover for the invasion of the public right." *Id.* (internal quotation and citation omitted). Feinberg's public nuisance claim is thus dismissed.

### C. Fire Code Violations Claim

Finally, Feinberg attempts to bring a claim against Apple for violations of the New York City Fire Code, relying on Tim Collins' affidavit.[1] Feinberg cites no case, however, in support of the proposition that a private right of action is available to enforce the Fire Code against a private party. The sole case on which Feinberg does rely, *Altschul v. Ludwig*, 111 N.E. 216 (N.Y. 1916), is inapposite. In *Altschul*, the court allowed suit against a government employee—"the

---

[1] Although Tim Collins' affidavit and supporting documents were not attached to the SAC, Feinberg argues that they should be considered by the Court in evaluating Apple's motion to dismiss. *See* Pl.'s Mem. at 9 ("Collins' letter reports cannot and should not be disregarded the context of the FRCP Rule 12(b)(6) motion."). The Court will assume, without deciding, that these documents are properly before the Court because they are incorporated into the SAC's fire safety allegations. *See* SAC ¶¶ 53–67.

superintendent of buildings of the borough of Manhattan"—to enjoin him from approving plans that ran afoul of then-exiting building code violations. *Id.* 2016–17. Feinberg, by contrast, does not name any government entities or officials as defendants to this suit, attempting instead to singlehandedly enforce the Fire Code against Apple. This he cannot do, as New York's Fire Code provides that "[t]he fire commissioner shall be responsible for the administration and enforcement of the fire code." N.Y.C. Admin. Code § 29-103; *accord* N.Y.C. Admin. Code § 29-104.1 ("The [fire] commissioner shall have the authority to render interpretations of this code and to adopt rules, policies, and procedures in order to clarify and implement its provisions."). The claim is thus dismissed.

### III. Leave to Amend

Finally, Apple urges the Court to deny Feinberg any opportunity to amend the SAC. Whether to grant or deny leave to amend is committed to the "sound discretion of the district court," and leave may be denied when amendment would prove futile. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009).

Feinberg, who is represented by counsel, has already had two opportunities to amend his complaint, once with the benefit of Apple's motion to dismiss. Nonetheless, the SAC neither sufficiently pleads standing nor states a claim for which relief can be granted. Because "[t]he problem with [Feinberg's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## CONCLUSION

For the foregoing reasons, the Court concludes that Feinberg lacks standing to bring this action against Apple and that, in any event, his SAC fails to state a claim. Because further amendment would be futile, Apple's motion to dismiss the SAC is granted with prejudice. The Clerk of Court is respectfully directed to enter judgment in favor or Apple and close the case.

Dated:   August 10, 2016
         New York, New York

                                           Ronnie Abrams
                                           United States District Judge